BAJDEK ET AL. *v.* BOARD OF TRUSTEES OF THE AMERICAN LEGION PULASKI POST NO. 357 TRUST ETC. ET AL.

[No. 19,139. Filed March 20, 1961. Rehearing denied May 4, 1961. Transfer denied June 20, 1961.]

*Olczak & Olczak,* of South Bend and *Lester Wilson,* of Winamac, for appellants.

*Jones, Obenchain, Johnson & Ford* and *Milton A. Johnson,* of South Bend, for appellees.

BIERLY, J.—According to the record herein, the facts out of which this litigation sprang may thus be summarized:

Sometime prior to May 1, 1944, the Pulaski Post #357, Inc., of the American Legion of South Bend, hereinafter referred to as the Post, was organized

under the laws of the State of Indiana, as a corporation not for profit and functioned since that time as such corporation. The sphere, purpose and limitation of activities of said corporation is set forth in its Articles of Incorporation, a copy of which was filed with the Recorder of St. Joseph County, Indiana, granting said corporation the authority to function as such non profit corporation.

On or about May 1, 1944, the duly constituted Commander and Adjutant, jointly as officers of said Post, and in behalf of said Post, entered into an Agreement of Trust with seven members of said Post named therein as Trustees of said Trust; that the salient features of said Trust Agreement provided: (A) According to the preamble, it is stated that the trust fund is set up for the benefit of the active membership of the Post who are veterans of World War I "or their widows, children or next of kin" in accordance with the provisions of the Trust; (B) That the Post deliver to said Trustees, the sum of $70,000, representing accumulated profits existing in the treasury of said Post and derived from Post activities, and in addition thereto, deliver to said Trustees and/or successor Trustees, a specified interest in potential anticipated future profits of said Post activities accruing from May 1, 1944 up to the date of the termination of hostilities in which the United States of America may be a participant in World War II; (C) As provided by said Trust, the beneficiaries thereof are specified, to-wit:

"The present members of American Legion Pulaski Post No. 357, who are veterans of World War I and members in good standing of said Pulaski Post *with all 1943 dues and assessments therein* fully paid and the persons entitled hereunder to the shares of any such *members who may die* during the life of this trust, *shall be and constitute the sole*

*beneficiaries hereof,* said qualified members being the following named persons to-wit:" (Our emphasis.) (The names and addresses of 381 trust beneficiaries are listed.)

(D) It was further provided in said Trust Agreement that "There shall and can be no increase of the number of beneficiaries hereunder. Decrease of the number of such member beneficiaries may occur *only by death* and *by forfeiture* in any of the events hereinabove provided." (Our emphasis); (E) The Trust Agreement provides for its termination at end of 12 years or earlier should all beneficiaries die prior thereto, and trust assets thence be liquidated and the net value thereof distributed equally among surviving members with shares of deceased members payable to their beneficiaries and/or heirs thereof; (F) That the "declaration of trust is irrevocable," and Post renounces all rights to corpus or "funds hereafter to be paid, once they have been paid to said Trustees . . . ." Date of trust agreement—May 1, 1944.

Appellants, as plaintiffs below, being the incorporated American Legion Post and its Commander, brought this action against defendants, being 7 Trustees of said Trust and members of said American Legion Post. Plaintiffs sought and were granted a temporary injunction restraining and enjoining defendants from the distribution of any of the trust corpus. Trial was to the court upon the amended first paragraph of complaint and the second paragraph thereof, answer was by appellees in conformity with the rules. Cause thence was submitted to court upon "a written stipulation of facts."

The court's finding was in favor of defendants-appellees. Judgment was rendered against plaintiffs-appellants on each paragraph of their complaint, thereby

denying relief sought by plaintiffs and dissolving the injunction.

Appellants thereafter made application for temporary injunction pending appeal, which was granted, thereby preventing further action by defendants in said distribution of trust funds, pending filing and disposition of a motion for a new trial, and until a judgment herein becomes final.

Motion for a new trial was timely filed and overruled. Appellants perfected this appeal.

Specifications of motion for a new trial were on grounds that the decision of the court is contrary to law. Appellants' assignment of errors is that the court erred in overruling appellants' motion for a new trial.

Appellant-plaintiff, Bert Nowinski, Post Commander of said Post, in his amended first paragraph of complaint charged inter alia "that the transfer of money (to the Trust) was without consideration; that the effect of the trust declaration was to designate classes of membership within the Post, contrary to the terms of its Articles of Incorporation; that the distribution of the trust money would result in the pecuniary remuneration of certain members of the Post and would inure to their profit; that the distribution would violate the State laws concerning corporations not-for-profit; that the transfer of the moneys in trust is without the scope of the powers of the corporation; and that the money and assets in the custody of the trustee defendants is the lawful property of the appellant, American Legion Post, and should be returned to the Post." (Appellants' Brief p. 3.)

Appellant-plaintiff, Pulaski Post #357, Inc., American Legion, in the second paragraph of complaint charged inter alia "that the trust fund was accumulated by Post activities; that the Post had no authority

to engage in any activity resulting in the pecuniary remuneration of certain Post members; that appellant-Post had no power to enter into the trust arrangement, or to give and deliver the money in trust for the purposes stated in the trust agreement; that the execution of the trust agreement and the payment of the trust moneys to the trustees is contrary to law; that the trustees hold the trust money and accumulated interest in resulting trust for the settlor, appellant, American Legion Post, and should be required to account to the appellant-Post for all of the money and accumulated interest." (Appellants' Brief, p. 4.)

Among the 30 Articles of agreed stipulation of facts, filed in open court, in this cause on July 15, 1957, some possess unusual significance apropos to the determination of this appeal. Article (1) specifies that the Pulaski Post No. 357 of the American Legion was incorporated about July 2, 1938, under the not-for-profit corporation act authorized by statute; that Article (2) sets forth that Post subsequent to its incorporation, drafted and adopted a constitution, and also by-laws, therein providing regulatory requirements in the operation of said Post, consistent with and in conformity with its Articles of Incorporation. It is further provided by Articles (4), (5) and (6) thereof that beginning in the year 1943, consideration was begun by said Post as to the feasibility of setting up a Trust Agreement whereby benefits were to accrue to members of said Post in good standing and being veterans of World War I; that contact was made with the State Department Commander of the Legion on May 25, 1943 and June 8, 1943, a communication was received from the office of the National Judge Advocate of the American Legion relative to said proposed Trust Agreement. Subsequently the Post approved said Trust

Agreement and authorized a transfer of $70,000.00 of its assets to the Trustees yet to be elected. It was further stipulated in Article (8) of said stipulations that on May 1, 1944, the Post, by its Commander and Secretary, entered into the Trust Agreement with the 7 Trustees as authorized by the Post's action on January 16, 1944. It was further stipulated that there were 379 members in good standing, Veterans of World War I, and 28 members in good standing who were World War II Veterans as of May 1, 1944; that at the date of the cause of action, February 14, 1956, there were 920 members of the Post in good standing; 316 veterans of World War I and 604 veterans of World War II; that at the termination of hostilities in August, 1945, $86,-750.80 had been transferred from the assets of said Post to the Trustees of said Trust Fund; that by April 6, 1956, 63 beneficiaries had died and pursuant to said Trust Agreement, the Trustees thereof, had distributed to "the wives and/or children of each of said deceased beneficiary the proportional share of said deceased member beneficiary in the exact aggregate amount of the Trust Fund as of the date of the last computation made thereof prior to such death."

Said agreed stipulation further stated that following the 6th day of April, 1956, and concluded with the date of the stipulation agreement, 15 additional beneficiaries had died but no payments had been made to "the wives and/or children because of the injunctive proceedings resulting in the order of April 6, 1956."

The parties in the court below stipulated the facts and agreed that the same "shall constitute the evidence of this cause upon which the court shall make its conclusions of law as applicable to such facts."

The Articles of Incorporation of Pulaski Post No. 357, Inc., the American Legion, was approved and filed

in the Office of the Secretary of State on July 2, 1938, and its provisions were in accordance with the Not For Profit Corporation Act of this State. No classes of members were specified in said Articles of Incorporation.

The Preamble of the Constitution of the American Legion Pulaski Post No. 357, Inc., Department of Indiana, tersely typifies the character and purposes of the Post's Articles of Incorporation, and the motivating force setting up its Articles as well as the by-laws in these words:

> "For God and country, we associate ourselves together for the following purposes; To uphold and defend the constitution of the United States of America; to maintain law and order; to foster and perpetuate a one hundred percent Americanism; to preserve the memories and incidents of our association in the great wars; to inculcate a sense of individual obligation to the community, state and nation, to combat the autocracy of both the classes and the masses; to make right the master of might; to promote peace and good will on earth; to safeguard and transmit to posterity the principles of justice, freedom and democracy; to consecrate and sanctify our comradeship by our devotion to mutual helpfulness."

Article XIII of the by-laws of said Post directed that the Post Executive Board create a sinking fund and 75% of the Post's yearly balance was to be therein deposited. The closing paragraph of said Article XIII reads thus:

> "This money in the sinking fund can only be used for Post expenses when recommended by the Executive Board and passed by 75% of the votes cast of all members at a regular meeting."

During the intervening discussions by the membership of the Post as to the advisability, practicability

and legality of setting up a Trust Fund through a proposed Trust Agreement and specifically for the benefit of the membership of said Post who were veterans of World War I, but excluding therefrom veterans of World War II, a conscientious and sincere effort was made to seek and obtain information from higher Legion officials, both from the State and also the National Department of the American Legion.

On May 25, 1943, the Commander of the Post and being joined by a special committee of three members, addressed a communication to the State Commander of the American Legion to the effect that the Post was confronted with a "proposal that a substantial part of the several thousand dollars now *in our respective funds be set aside in a death benefit program for the widows and children and next of kin of all members of our Post as of December 8, 1941, or later."* (Our emphasis.)

In this communication it was further asserted that a Committee of the Post was appointed to investigate the contemplated program. This committee conferred with a local attorney, who after examining the constitution and by-laws of the Post and of the State Department, reported to the committee advising that there was nothing in the aforesaid documents which either authorized or prevented an "adoption of any program which would involve the setting aside of the existing fund for widows, children and next of kin of the members as of December 8, 1941, or later." Said attorney further advised that contact be made with the State Department of the Legion, which Department may wish to seek the opinion of the National Organization. The Commander and the Special Committee concluded their letter to the State Commander by asserting that they believed it only fair that a part of the outstanding

assets *"be set aside in this worthwhile program to give some financial assistance and help to the widow, children and next of kin of members of our Post as of December 8, 1941, or later, who die hereafter."* (Our emphasis.)

Apparently the State Commander referred the communication to the Judge Advocate of the American Legion of Indiana, who in turn forwarded the same to the National Advocate of the American Legion. A letter addressed in answer by the National Judge Advocate to the State Judge Advocate is so pertinent and of such importance that a copy of same is herein quoted verbatim:

"COPY

June 8, 1943
(Dict. June 7)
373-3

Honorable A. Dale Eby
Judge Advocate
The American Legion of Indiana
Princeton, Indiana
Dear Dale:

This will acknowledge your letter of June 4, in which you attached a copy of communication to the Department Commander from Pulaski Post No. 357, Indiana Department.

In my judgment the Post would be entirely within its rights in establishing a trust fund consisting of the assets referred to in the communication for the class of beneficiaries set out therein. I would suggest that a trust be created for this purpose with a provision relative to the succession of trustees so that the purpose of the trust as set out in the letter may be properly accomplished.

With kindest personal regards, I am,

Sincerely yours,
RALPH B. GREGG
National Judge Advocate

cc—Department Commander
            Adjutant
    —National Exec. Committeeman"

One salient aspect of the above communications from the Post to the State Commander and from the National Judge Advocate of the American Legion to the Judge Advocate of the American Legion of Indiana, is a strange silence of the fact that the Post was incorporated under the laws of Indiana as a Not For Profit Corporation. Nor did the research by the local attorney indicate that an examination and judgment had been rendered relative to the Post's Articles of Incorporation nor the Indiana statutes governing the Not For Profit Corporations.

There further exists a striking lack of conformity and agreement in the purposes of the contemplated Trust Fund as distinguished in said communication, to-wit:

> ". . . a portion of our existing assets *be set aside in this worthwhile program to give some financial assistance and help to the widows, children, and next of kin of members of our Post as of December 8, 1941, or later, who died hereafter,"* (our emphasis);

approved by the National Judge Advocate in these words:

> *"In my judgment, the Post would be entirely within its rights in establishing a trust fund consisting of the assets referred to in the communication for the class of beneficiaries set out therein,"* (our emphasis);

when compared with the beneficiaries set out in the Trust Agreement as quoted in (C) heretofore, to-wit:

> "The present members of American Legion Pulaski Post No. 357, who are veterans of World War I and members in good standing of said Pulaski Post *with all 1943 dues and assessments therein* fully paid and the persons entitled hereunder to the shares of any such *members who may die*

during the life of this trust, *shall be and consti-
tute the sole beneficiaries hereof*, . . . (Our em-
phasis.)

Apparently no explanation was forthcoming, as to
the change in the purpose of the contemplated trust
fund, on which the Post sought by letter on May 3,
1943, legal advice from higher American Legion au-
thorities indicating the setting up of a "fund for widows,
children and next of kin of members" of Veterans of
World War I, of the purpose set up in the adopted
Trust Fund Agreement, therein providing specifically
that the funds in question were to be set aside for the
members of the Post, who are Veterans of World War
I as beneficiaries.

It is without the scope of this opinion, to consider
the conclusions that may have been reached should
the Trust Fund Agreement have provided that widows,
children, and next of kin be the beneficiaries.

It was agreed in the stipulations that the Post en-
gaged in various activities to produce a financial profit,
and that one of these activities was "the dispensing
and sale of alcoholic beverages under the laws of the
State of Indiana as a Class 4 organization." A not for
profit corporation enjoying the Class 4 status for the
sale of alcoholic beverages, receives preferential treat-
ment as to license fees over the regular retail dispenser.
It was further stipulated that the U. S. Treasury De-
partment by virtue of the Internal Revenue Code
"granted to the incorporated Post, Federal income tax
exempt status, as an organization organized not for
profit." Further, in the stipulation of facts it is as-
serted that the Treasury Department by letter dated
September 24, 1943, in answer to a letter addressed
by the Service Officer of the Post, dated September 10,
1953, relative to the tax exempt status of the Post, in

light of the Trust Fund Agreement, admonished the Post that unless recovery of the funds in the Trust Fund Agreement be obtained by the Post, its action in permitting a part of its net earnings to inure to the benefit of some of its members "instead of being used exclusively for charitable, educational or recreational purposes *would result in the loss of the Post's tax exempt status.*" (Our emphasis.) It was further stipulated that the parties were without knowledge as to what other information, if any, impelled the decision of the District Director, in addition to the content of the letter, written by the Service Officer of the Post to the Treasury Department.

By way of recapitulation, the evidence clearly shows: (1) that the Post was organized under the statutes of Indiana as a not for profit organization; (2) that the Articles of Incorporation, adopted by the Post and approved by the Secretary of State, clearly indicated the purposes of its recommendation as set out in the Preamble heretofore quoted, and said Articles are strangely silent as to profits of any Post activities inuring to members except for hired personnel; (3) that the Constitution of the Post contains no provision either directly of inferentially permitting profits to inure to the membership of the Post; and (4) that Article XIII of the by-laws of the Post, heretofore quoted, provides that 75% of the profit must be deposited in a sinking fund and can "only be used for Post purposes."

We must now look to the Indiana statutes applicable to this appeal.

The statutes of Indiana contain very specifically under Indiana General Not For Profit Corporation Act fundamental principles and regulations in reference to not for profit corporations organized under the pro-

visions of such act. Subsection (d) of Section 25-508, Burns' Supplemental, reads as follows:

"(d) The term 'not for profit' as applied to any corporation organized or reorganized under this act shall mean and include any corporation which does not engage in any activities for the profit of its members and which is organized and conducts its affairs for purposes other than the pecuniary gain of its members.

"The term 'not for profit' as used in this act also shall include but not be limited to any religious, civil, social, educational, fraternal, charitable or cemetery association organized or reorganized under this act which does not engage in any activities for the profit of its trustees, directors, incorporators, or members."

It is further provided in Subsection (c) of 25-510 of such act as follows:

"(c) No corporation shall, by any implication or construction, be deemed to possess the power of engaging in any activities for the purpose of or resulting in the pecuniary remuneration to its members as such, but this provision shall not be deemed to prohibit reasonable compensation to members for services actually rendered; nor shall such corporation be prohibited from engaging in any undertaking for profit so long as such undertaking does not inure to the profit of its members."

Thus it clearly appears that when any organization derives its being under the corporation not for profit act, it subjects itself to all the provisions of the same and avails itself of the privilege status conferred while likewise subjecting itself to such limitations and restrictions as is provided by the statutes enacted by the Legislature.

"It follows that non profit status depends on what is done by an enterprise or organization with

its income. If this is distributed to persons active in the enterprise, the purpose is profit. If income is employed solely to further a moral or ethical purpose, the enterprise qualifies for a non profit status. Howard L. Oleck, Non-Profit Corporations and Associations (1956), p. 109."

Nor can it be questioned but that it is the law in Indiana that the statutes under which a corporation is organized must be and constitute a part of its Articles of Incorporation. *Mercantile Comm. Bank* v. *Southwestern, etc., Corp.* (1929), 93 Ind. App. 313, 169 N. E. 91. Appellees questioned the preparation of appellants' brief as failing to comply with the Supreme Court's Rule 2-17. While the criticism may in some measure be justified yet appellants by their brief presented what occurred in the trial court and was sought to be presented on appeal. Thus, therefore, we conclude a good faith effort was made to comply with the rules.

Without mandate other than the vote of the membership of the Post present at a regular meeting, the Trust Fund was set up by the formation of a Trust Agreement. Appellees contend and we may presume the trial court agreed that the mere failure to comply with the Not for Profit Corporation Act, *while unauthorized,* is not illegal or void. We deem it as at variance with the law to support any action of the Post which is not subjected to every provision of all instruments that give it being and legal existence. This, we conclude, was not done by the Post. The record disclosed much consideration and deliberation were employed by the Post before the Trust Agreement was finally adopted; that the Post was concerned that the said agreement should lie within the bounds or limits of the law prescribed for corporations organized under the law au-

thorizing not for profit corporations. But we think this was not accomplished.

In their brief, appellees urge that the giving away of assets and profits of the corporation to a certain class of members using as a vehicle the Trust Fund set up was in fact an implied charitable enterprise, and hence legitimate. No available citation or authority appears to justify a characterization as a charitable trust of the Trust Fund which specifically gives to such Post members named in the Trust Agreement, a cash sum of the corporate assets derived through income profits from corporate activities. To authorize this would result in a break down of the wall of demarkation separating income activities of a corporation not for profit from activities of a corporation for profit.

The appellees strenuously propose that the Trust Agreement made May 1, 1944, was a contract irrevocable and said Trust Agreement involving the subject matter at issue would be voided only for fraud, mistake, duress or undue influence. Appellees further allege that such a condition is nonexistent in said Trust Agreement. With this thinking and reasoning, we are unable to agree. Sight must not be lost of the fact that the Post was organized under the Not for Profit Corporation Act and thereby was bound by the statutes prohibiting income profits to be disbursed for the benefit of individual members. To maintain such Trust Agreement as binding and irrevocable, the Post of necessity, would be required to forfeit its classification as a not for profit corporation in favor of some kind of an association for profit, thereby losing its tax exempt status, its loss of a preferred Class 4 rating as well as a preferential status in other particulars.

Furthermore, we are unimpressed with the reasoning that because most of the accumulated income profit by the Post resulted from the efforts of World War I Veterans, the accumulated balance of income profit as of a certain day could legally be transferred into a Trust Fund beyond the control and possession of the Post and with World War I Veteran employees being the sole beneficiaries. If this be approved, what may prevent a later Trust Fund Agreement being set up for World War II Veterans, and even at a later time, such a Trust Fund for Veterans of the Korean War?

Argument has been advanced that it would be unfair and unconscionable to the beneficiaries of the Trust since a partial distribution has been made of some of the income profits under the contract.

If the Trust Agreement be not in harmony with, but violative of, the provisions of the statutes giving the Post its corporate existence, and such contract be void, as we believe, the invalidity had its inception in the initial execution of the Trust Fund Agreement.

Item 28 of the agreed stipulation of facts is as follows:

"28.) THAT it is a part of said Trust Agreement that said agreement shall be construed and performed according to the laws of the State of Indiana."

The setting up of the Trust Fund in the Trust Agreement is construed as an ultra vires act. An ultra vires act is technically designated in the law of corporations as an act beyond the "scope of the powers of a corporation as defined by its charter or act of incorporation." *State ex rel.* v. *Holston Trust Co.*, 168 Tenn. 546, 79 S. W. 2d 1012, 1016. The argument of appellees appears to the effect that if the setting up of a Trust Fund, as was done in the here

involved Trust Agreement, was an ultra vires act, it cannot be assumed to be void but it may be voidable; that due to the lapse of time since the setting up of the Trust Fund and laches upon the part of the appellants, said contract as specified in the Trust Agreement has become impervious to attack.

In the case of *Koerner Lodge, No. 6, K. of P. et al.* v. *Grand Lodge K. of P.* (1897), 146 Ind. 639, 45 N. E. 1103, the subordinate lodge, being classified as a Beneficiary Association, voted to sever relations with the order of Knights of Pythias and dissolve because of the indignation of an action taken by the Supreme Lodge as reported by the chancellor relative to an alleged scurrilous attack made upon the German lodges of the order. Among other actions taken by the local lodge was this:

"3d. That we turn over our entire property to the German Mutual Aid and Benefit Society of Indiana."

Eleven members of the association protested the action of the subordinate lodge in dissolving itself by a majority vote and in attempting to dispose of its property as aforesaid. The Supreme Court reversed the trial court, and in so doing it was held that:

". . . members of a beneficial association may not divert the funds and property of their lodge from the specified purposes to which, under the laws of the order, the same has been dedicated, and a resolution seeking so as to divert such funds and property is ultra vires. . . ." West's Indiana Law Encyclopedia, Volume 4, Page 142.

The exactitude with which the Indiana Corporation Not For Profit Act prescribes in detail the setting up of any organization coming under its provisions, runs through all the provisions of the act, even to the explicit

requirements set forth in the statute pertaining to the dissolution of a corporation.

Section 25-532 of 1960 Burns' Cumulative Supplement governing Dissolution proceedings—Solvent and insolvent corporations, contains this significant provision as a part of Subsection (2) thereof, to-wit:

> "Any moneys or property remaining after all amounts designated in this section shall have been paid, shall escheat to the State of Indiana, and shall be paid into the general treasury of the State of Indiana, by the payment thereof to the treasurer of state, who shall issue his receipts to the corporation. The attorney general of Indiana is hereby empowered to take all action necessary to collect the same: Provided, however, That if the corporation, whether incorporated before or after the enactment of this provision shall be a Supreme or Grand Lodge, or a body corresponding thereto, or Subordinate or Member Lodge, of an order organized under a fraternal lodge system and is duly chartered and instituted in accordance with the laws of the Order, the moneys or property remaining after creditors shall have been paid in full, shall be disposed of in the manner provided in the laws, by-laws or regulations of such Order, but in no event shall any of such moneys or property be distributed among the members or inure to their individual or personal benefit: Provided further, That the moneys or property of any veterans' organization or post, whose articles of incorporation or amendments thereto so provide, shall transfer by operation of law upon dissolution, to its national corporation if said national corporation was created by an act of Congress." [Acts 1951, ch. 130, §4, p. 340, Subsection (2).]

By reasonable interpretation the statute forbids what the herein trust attempted to do. We are of the opinion that the appellee not for profit corporation could not legally accomplish, by means of a declared trust, a purpose specifically prohibited by the

statute which gave creation and existence to such corporation.

It is our opinion that the decision of the trial court in this cause is contrary to law in its refusal to grant appellants' motion for a new trial.

Judgment is reversed with instructions to sustain appellants' motion for a new trial and for further proceedings consistent with this opinion.

This Court, by a majority of the judges thereof, exercised its discretion as authorized by §4-202 Burns' Annotated Indiana Pocket Supplement 1960, to sit in Banc in the consideration and opinion in this appeal.

Ax, C. J., Cooper, Kelley, Myers, Pfaff, P. J., and Ryan, JJ., concur.

Gonas, J., not participating.

NOTE.—Reported in 173 N. E. 2d 61.