**Cheryl SANFORD, as Personal Representative of the Estate of Dortha Bagley, Appellant–Plaintiff,**

v.

**CASTLETON HEALTH CARE CENTER, LLC, d/b/a Castleton Health Care Center, Appellee–Defendant.**

**No. 49A02–0310–CV–885.**

Court of Appeals of Indiana.

Aug. 13, 2004.

Rehearing Denied Oct. 20, 2004.

---

H. Kennard Bennett, Severns & Bennett, P.C., Indianapolis, IN, Attorney for Appellant.

Douglas B. Bates, Stites & Harbison, PLLC, Jeffersonville, IN, Attorney for Appellee.

George Clyde Gray, Daniel L. Robinson, Gray Robinson Ryan & Fox, Indianapolis, IN, Dorothy Siemon and Michael Schuster, Pro Hac Vice, AARP Foundation Litigation, Washington, D.C., Eric Carlson, Pro Hac Vice, National Senior Citizens Law Center, Los Angeles, CA, Attorneys for Amici Curiae AARP and National Citizens' Coalition for Nursing Home Reform.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Plaintiff Cheryl Sanford, as Personal Representative of the Estate of Dortha Bagley (the "Estate") appeals the trial court's order compelling arbitration of the Estate's survival and wrongful death claims against Appellee–Defendant Castleton Health Care Center ("Castleton Center"). We affirm.[1]

### Issue

The Estate raises four issues on appeal, which we consolidate and restate as whether the trial court erred by enforcing the arbitration agreement at issue and compelling arbitration.

### Facts and Procedural History

On March 7, 1996, Dortha Bagley ("Bagley") designated her daughter, Cheryl A. Sanford ("Sanford"), as her limited durable power of attorney. Pursuant to this power of attorney, Sanford had the power to "admit or release [Bagley] from any hospital or health care facility." Appellee's App. at 42.

Bagley suffered from Alzheimer's and, as a consequence, had been a patient at Carmel Care until that nursing home closed its Alzheimer's unit. Sanford planned to transfer her mother from Carmel Care to a nursing home in Noblesville; however, the Noblesville facility was unable to immediately accommodate Bagley because of a lack of room availability and would remain unable to accept Bagley as a patient for several days. In the interim, on September 17, 2001, Sanford checked Bagley into Castleton Center. In so doing, Sanford, acting as Bagley's legal representative, executed an Admission and Financial Contract with Castleton Center ("Contract"). The Contract contains the following provisions:

A. PRELIMINARY STATEMENTS:

Patient [i.e., Bagley] individually or by and through Patient's Legal Representative (hereinafter referred to as Patient) has considered appropriate care settings and is desirous of receiving care at this Center; and

---

**1.** We hereby deny the Estate's motion for oral argument.

Patient has reviewed this ADMISSION AND FINANCIAL CONTRACT, has had opportunity to ask questions of Center personnel about the contract and understands that admission to this Center constitutes agreement to be bound by said ADMISSION AND FINANCIAL CONTRACT ...

\* \* \* \* \*

## H. DISPUTE RESOLUTION PROCEDURE:

1. *Initial Grievance Procedure:* The parties agree to follow the Grievance procedure described in the patient Rights Booklet for any claims or disputes arising out of or in connection with the care rendered to patient by Center and/or its employees. Patient should know that Center is prepared to mediate any concerns at any time upon patient request ...

2. *MEDIATION:* In the event there is a dispute and/or disputes arising out of or relating to (i) this contract or the breach thereof or any tort claim; or (ii) whether or not there has been a violation of any right or rights granted under state law, and the parties are unable to resolve such dispute through negotiation, then the parties agree in good faith to attempt to settle the dispute by mediation administered by Alternate Dispute Resolution Service of the American Health Lawyers Association before resorting to arbitration....

3. *ARBITRATION:* Any disputes not settled by mediation within 60 days after a mediator is appointed shall be resolved by binding arbitration administered by the Alternate Dispute Resolution Service of the American Health Lawyers Association

and judgment may be entered in any court having jurisdiction thereof.... Appellant's App. at 16, 24–25 (emphasis and capitalization in original). A signature line, bearing Sanford's signature, appears immediately following the arbitration provision.

In a deposition, which was filed with the court on September 22, 2003, Andrea Philpot ("Philpot"), who worked at Castleton Center in 2001 as the Director of Admissions and Marketing, testified regarding the standard admission procedures at Castleton Center. In particular, Philpot testified that, in general, if a patient asked about arbitration, she would inform him or her that "in the event of a dispute by the arbitration, ... there would be no trial by jury." Appellant's App. at 31. However, Philpot did not specifically recall meeting with Sanford during Bagley's admission.

In addition, in a deposition, which was also filed with the trial court on September 22, 2003, Sanford testified that, although she felt "rushed" by the unfortunate circumstances of admitting her mother to Castleton Center—i.e., during the admission process, Bagley was yelling and behaving very aggressively and, at times, Sanford had to attend to her children—no one at Castleton Center urged her to hurry or told her not to read the Contract. *Id.* at 8. Indeed, Sanford acknowledged that, while she did not read the entire Contract including the arbitration provision containing her signature, she was not precluded from doing so.

Sanford further testified that she worked with Philpot during the admission process and found her to be "friendly." *Id.* at 6. Sanford acknowledged that Philpot told her that Castleton Center would have a meeting with Bagley's family and would "go over all of this stuff [i.e., the Contract] again at that time." *Id.* As to her educational background, Sanford testi-

fied that she graduated from high school and finished a two-year business curriculum at Porter College, but did not receive a degree. Moreover, Sanford had worked as a business manager for a photography studio.

On September 3, 2003, the Estate filed an amended complaint and jury demand, alleging that, on October 2, 2001, Bagley fell twice at Castleton Center and was transported to Community Hospital with a fractured hip and a urinary tract infection. The amended complaint also alleged that, after undergoing surgery on her hip, Bagley died on October 7, 2001, i.e., twenty-one days after being admitted to Castleton Center. In response, Castleton Center filed a motion to compel arbitration. Pursuant to the Chronological Case Summary, the trial court conducted a hearing on Castleton Center's motion to compel wherein it heard evidence; however, no transcript of that hearing is available on appeal. On October 7, 2003, the trial court entered its order compelling the Estate to submit the survival and wrongful death claims to mediation and, if necessary, arbitration. It is from this order that the Estate now appeals.

**Discussion and Decision**

On appeal, the Estate argues that the trial court erred by compelling it to arbitrate the survival and wrongful death claims against Castleton Center. It is well settled that Indiana recognizes a strong policy favoring enforcement of arbitration agreements. *Northwestern Mut. Life Ins. Co. v. Stinnett,* 698 N.E.2d 339, 343 (Ind.Ct.App.1998). Nevertheless, because arbitration is a matter of contract, a party cannot be required to submit to arbitration unless he or she has agreed to do so. *Int'l Creative Mgmt., Inc. v. D & R Entm't Co.,* 670 N.E.2d 1305, 1311 (Ind.Ct. App.1996), *trans. denied.* Accordingly, where a court is asked to compel or stay arbitration, it faces the threshold question of whether the parties have agreed to arbitrate the particular dispute. *Id.* Before a court compels arbitration, it must resolve any claims the parties had concerning the validity of the contract containing the arbitration clause. *PSI Energy, Inc. v. AMAX, Inc.,* 644 N.E.2d 96, 99 (Ind.1994). Once satisfied that the parties contracted to submit their disputes to arbitration, however, the court is required by statute to compel arbitration. *See* Ind.Code § 34–57–2–3 ("On application of a party showing an agreement described in section 1 of this chapter, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration."). Judicial inquiry is thus limited to the validity of the contract containing the arbitration clause, not the construction of that clause. *PSI Energy,* 644 N.E.2d at 99.

In addition, under Indiana contract law, the party seeking to compel arbitration has the burden of demonstrating the existence of an enforceable arbitration agreement. *Wilson Fertilizer & Grain v. ADM Milling Co.,* 654 N.E.2d 848, 849 (Ind.Ct.App.1995), *trans. denied.* When determining whether the parties have agreed to arbitrate a dispute, we apply ordinary contract principles governed by state law. *Showboat Marina Casino P'ship v. Tonn & Blank Const.,* 790 N.E.2d 595, 598 (Ind.Ct.App.2003). Further, "[w]hen construing arbitration agreements, every doubt is to be resolved in favor of arbitration," and the "parties are bound to arbitrate all matters, not explicitly excluded, that reasonably fit within the language used." *Id.* (citations omitted). However, parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate; arbitration agreements will not be extended by construction or implication. *Id.* Construction of the terms of a written arbitration con-

tract is a pure question of law, and we conduct a de novo review of the trial court's conclusions in that regard. *Northern Ind. Commuter Transp. Dist. v. Chicago SouthShore and South Bend R.R.*, 744 N.E.2d 490, 495 (Ind.Ct.App.2001) (discussing appellate review of a contract), *trans. denied.*

The Estate argues that the trial court's order compelling it to arbitration was erroneous because: (1) the Contract is an unconscionable adhesion contract; (2) the arbitration clause of the Contract conflicts with the Federal Arbitration Act; (3) Sanford's waiver of Bagley's constitutional right to a jury trial was unknowing and involuntary; and (4) Sanford, as personal representative of the Estate, was not a party, nor in privity with a party, to the Contract. We address each argument separately.

### A. Unconscionable Contract

■ First, the Estate contends that the trial court erroneously compelled it to arbitrate the survival and wrongful death claims because the Contract is an unconscionable adhesion contract. In so arguing, the Estate recognizes that "[a] written agreement to submit to arbitration is valid, and enforceable, an existing controversy or a controversy thereafter arising is valid and enforceable, except upon such grounds as exist at law or in equity for the revocation of any contract." *See* Ind.Code § 34–57–2–1(a). However, the Estate maintains that the Contract, including the arbitration clause at issue, is not enforceable because it was included in a nursing home admission agreement and, as such, is an unconscionable adhesion contract. The question of whether an admission agreement between a nursing home facility and a prospective admittee may contain an arbitration clause is one of first impression in Indiana.

■ Initially, and assuming arguendo that the Contract is one of adhesion, we observe that an adhesion contract—i.e., "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it"—is not per se unconscionable. *Pigman v. Ameritech Pub., Inc.*, 641 N.E.2d 1026, 1035 (Ind.Ct.App. 1994) (citing 17 C.J.S. Contracts § 10), *overruled on other grounds, Trimble v. Ameritech Pub., Inc.*, 700 N.E.2d 1128 (Ind.1998). Rather, a contract is unconscionable if a great disparity in bargaining power exists between the parties, such that the weaker party is made to sign a contract unwillingly or without being aware of its terms. *White River Conservancy Dist. v. Commonwealth Eng'rs, Inc.*, 575 N.E.2d 1011, 1017 (Ind.App.1991), *reh'g denied, trans. denied.* To be unconscionable, "[t]he contract must be 'such as no sensible man not under delusion, duress or in distress would make, and such as no honest and fair man would accept.'" *Progressive Constr. & Eng'g Co. v. Ind. & Mich. Elec. Co.*, 533 N.E.2d 1279, 1286 (Ind.Ct.App.1989). A contract is not unenforceable merely because one party enjoys advantages over another. *Dan Purvis Drugs, Inc. v. Aetna Life Ins. Co.*, 412 N.E.2d 129, 131 (Ind.Ct.App.1980), *trans. denied.*

■ Here, Sanford argues that the Contract is unconscionable because the arbitration clause at issue is buried within the Contract "in the same size font as the rest of the agreement." Appellant's Br. at 9. However, the arbitration clause is not buried or hidden in the Contract. Rather, it appears on page ten of the Contract with the following heading: "3. *ARBITRATION.*" Appellant's App. at 25 (emphasis and capitalization in original). Even more compelling for purposes of our analysis,

the arbitration clause is immediately followed by a signature line, which bears Sanford's signature. Under Indiana law, a person is presumed to understand and assent to the terms of the contracts he or she signs. *Buschman v. ADS Corp.*, 782 N.E.2d 423, 428 (Ind.Ct.App.2003). Accordingly, because Sanford as Bagley's legal representative executed the arbitration clause, we will presume that she read it and understood its contents.

Sanford also asserts that the Contract is unconscionable because, while it required the nursing home admittee to accept the arbitration clause on a take-it-or-leave-it basis, it did not delineate to unsuspecting admittees the process of arbitration. We have not found any case precedent supporting the proposition that arbitration agreements are only binding and enforceable when they describe in detail the process of arbitration. In addition, we note that, in this case, Sanford was not precluded from asking questions regarding the process of arbitration. The record demonstrates that if a patient asked about arbitration, Philpot would inform him or her that "in the event of a dispute by the arbitration, . . . there would be no trial by jury." Appellant's App. at 31.

In addition, Sanford testified that, although she felt "rushed" by the unfortunate circumstances of admitting her mother to Castleton Center—i.e., during the admission process, Bagley was yelling and behaving very aggressively and, at times, Sanford had to attend to her children—no one at Castleton Center urged her to hurry or told her not to read the Contract. *Id.* at 8. Indeed, Sanford acknowledged that, although she did not read the entire Contract including the arbitration provision containing her signature, she was not precluded from doing so. Sanford further testified that she worked with Philpot during the admission process and found her to

be "friendly." Appellant's App. at 6. Thus, on appeal, the Estate has failed to show that Sanford signed the Contract containing the arbitration clause unwillingly and without being legally aware of its terms. Consequently, the trial court did not err by compelling the Estate to arbitrate the survival and wrongful death claims.

Further, the amici curiae caution that the potential for abuse surrounding the inclusion of arbitration clauses in nursing home admission contracts, such as the one at issue, is great because admittees are typically older, suffer diminished physical and/or mental health, and enjoy reduced mobility. In addition, in most cases, the family members have resorted to seeking admission to the nursing home because they are no longer able to care for their loved ones. We are mindful that the decision to place a family member or loved one in a nursing home is a difficult one. We note, however, that the arbitration clause at issue does not limit the Estate, in any way, from seeking to recover for the alleged negligent acts of Castleton Center. Moreover, the arbitration agreement does not prevent admittees from challenging the validity of any of the remaining contractual provisions. Rather, the only limitation imposed on an admittee by virtue of the arbitration clause is the forums wherein the issues may be raised, i.e., mediation followed by arbitration, if necessary.

### B. The Federal Arbitration Act

Second, the Estate argues that the trial court erred by compelling it to arbitrate its survival and wrongful death claims because the arbitration clause of the Contract conflicts with the Federal Arbitration Act. To support this assertion, the Estate relies upon 42 U.S.C. 1396r(c)(5)(A)(iii), which provides, in relevant part, that "[w]ith respect to admissions practices, a nursing facility must:"

in the case of an individual who is entitled to medical assistance for nursing facility services, *not charge, solicit, accept, or receive, in addition to any amount otherwise required to be paid under the State plan under this subchapter, any gift, money, donation, or other consideration as a precondition of admitting* (or expediting the admission of) the individual to the facility or as a requirement for the individual's continued stay in the facility.

(Emphasis added). The Estate urges us to conclude that an arbitration clause in an admission to nursing home contract constitutes "other consideration" and is, thus, in violation of the Federal Arbitration Act.

 Resolution of this contention requires us to apply tools of statutory construction. Because the general phrase "other consideration" follows a specific enumeration of items including gift, money, or donation, we apply the principle of *ejusdem generis*, which maintains that "where words of specific and limited signification in a statute are followed by general words of more comprehensive import, the general words shall be construed as embracing only such persons, places, and things as are of like kind or class to those designated by the specific words, unless a contrary intention is clearly shown by the statute." *Cunningham v. Bakker Produce, Inc.*, 712 N.E.2d 1002, 1006 (Ind.Ct. App.1999), *trans. denied.* Put another way, *ejusdem generis* is a "cannon of construction that when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed." BLACK'S LAW DICTIONARY 535 (7th ed.1999).

Here, the Estate argues that the phrase "other consideration" is broad enough to encompass the arbitration clause, because such clause was an inducement to contract.[2] In essence, the Estate maintains that Bagley's agreement to arbitrate any claims arising out of the Contract and, thereby, relinquish her right to a jury trial was tantamount to a gift, money, or donation made on behalf of Bagley to Castleton Center, such that when Castleton Center accepted the arbitration agreement, it was in violation of 42 U.S.C. 1396r(c)(5)(A)(iii). We disagree.

Employing the doctrine of *ejusdem generis*, we hold that the general phrase "other consideration," when followed by a specific enumeration of the terms gift, money, or donation, does not encompass an arbitration agreement. In fact, we note that requiring a nursing-home admittee to sign an arbitration agreement is not akin to charging an additional fee or other consideration as a prerequisite of admittance. Rather, an arbitration agreement merely establishes a forum for future disputes; both parties are bound to it and both parties receive whatever benefits and detriments accompany the arbitral forum. Accordingly, the arbitration clause of the Contract is not in violation of the Federal Arbitration Act.[3]

**2.** We observe that the Estate's argument that the arbitration clause was an inducement in the execution of the Contract is contrary to its contention that the arbitration clause was buried or hidden in the Contract.

**3.** In light of exclusive arbitration clauses, like the one at issue, we query whether qualified medical health care providers retain the ability to avail themselves of the provisions and attendant benefits of the Medical Malpractice Act, including a limitation on the amount of the provider's liability—i.e., Indiana Code Section 34-18-14-3—and review of the plaintiff's claim by a medical review panel—i.e., Indiana Code Section 34-18-8-4. Thus, these qualified providers need to be cognizant that, should they include these exclusive arbitration clauses in their contracts, they might be relinquishing not only their rights to a jury

## C. Knowing and Voluntary Waiver of Civil Jury Trial Right

Next, the Estate claims that the trial court's enforcement of the arbitration clause of the Contract unconstitutionally deprived it of a jury trial by requiring that the survival and wrongful death claims be submitted to the arbiter. In so arguing, the Estate relies upon Article I, Section 20 of the Indiana Constitution, which dictates: "In all civil cases, the right of trial by jury shall remain inviolate." Ind. Const. art. I, § 20. However, "[t]his constitutional right is not absolute and may be waived." *Scott v. Crussen*, 741 N.E.2d 743, 746 (Ind.Ct.App.2000), *trans. denied.* Indeed, Indiana Trial Rule 38, which governs a jury trial of right, provides, in part, that:

> (E) Arbitration. Nothing in these rules shall deny the parties the right by contract or agreement to submit or to agree to submit controversies to arbitration made before or after commencement of an action thereon or deny the courts power to specifically enforce such agreements.

This trial rule recognizes a "very strong presumption of enforceability of contracts that represent the freely bargained agreement of the parties." *Ransburg v. Richards*, 770 N.E.2d 393, 395 (Ind.Ct.App. 2002) (quotations omitted), *trans denied.*

In the present case, Sanford, acting as Bagley's legal representative, executed the Contract, which contained the arbitration clause. In so doing, Sanford waived Bagley's right to a trial by jury and, instead, agreed to submit any future controversies to arbitration. Moreover, the evidence reveals that Sanford, who received her high school diploma and completed the curricula for a two-year business degree, was grant-ed the opportunity to read the Contract. Indeed, a signature line bearing Sanford's signature immediately follows the arbitration clause. It is unfortunate that Sanford felt rushed by circumstances beyond Castleton Center's control, i.e., Bagley's behavior and distractions by her children. However, such circumstances did not render Sanford's waiver of Bagley's constitutional right to trial by jury unknowing and involuntary.

## D. Party or Privy to the Contract

Lastly, the Estate maintains that it is not bound by the arbitration clause because it was not party or privy to the Contract. An arbitration agreement, like any other contract, only binds parties to the agreement or those in privity with a party. *Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 289 (Ind.Ct. App.2001). Privity is found if a non-party holds "a mutual or successive relationship with [a party] with regard to property or [when] their interests are so identical as to represent the same legal right." *Isp.com LLC. v. Theising*, 805 N.E.2d 767, 776 (Ind.2004), *reh'g denied.*

Here, we find the Estate's argument unpersuasive, however, because regardless of whether Sanford, i.e., Bagley's legal representative and the Estate's personal representative, was privy to the contract containing the arbitration clause, the Estate's survival and wrongful death claims arose out of Castleton Center's alleged negligent treatment of Bagley. For example, Count I of the amended complaint, which encompasses the survival action, alleges that Castleton Center was negligent for failing to:

> a. ... provide adequate medical and nursing care, including appropriate

trial and to a broader review on appeal, but also their right to avail themselves of the

Medical Malpractice Act.

assistance with her activities of daily living;

b. ... provide proper assessment of [Bagley's] mental, physical, and psychological needs, and [failing] to define and/or implement a plan of care to meet those needs;

c. ... prevent the fall that occurred on the morning of October 2, 2001;

d. ... properly assess [Bagley] after the fall on the morning of October 2, 2001;

e. ... prevent the second fall that occurred on the afternoon of October 2, 2001;

f. ... prevent incontinence;

g. ... prevent urinal tract infection; [and]

h. ... notify [Bagley's] family of changes in [Bagley's] condition.

Appellee's App. at 15–16.

Indiana Code Section 34–9–3–1, commonly referred to as Indiana's Survival Statute, provides as follows:

(a) If an individual who is *entitled* or liable in a cause of action dies, the cause of action survives and may be brought by or against the representative of the deceased party except actions for:

* * * * *

(6) personal injuries to the deceased party;

which survive only to the extent provided in this chapter.

(b) An action under this chapter may be brought, or the court, on motion, may allow the action to be continued by or against the legal representatives or successors in interest of the deceased. The action is considered a continued action and accrues to the representatives or successors at the time the action would have accrued to the deceased if the deceased had survived.

Ind.Code § 34–9–3–1 (emphasis added). In addition, Indiana Code Section 34–9–3–4, which applies when a person "receives personal injuries caused by the wrongful act or omission of another" and subsequently dies from causes other than those personal injuries, provides that:

The personal representative of the decedent who was injured may maintain an action against the wrongdoer to recover all damages resulting before the date of death from those injuries that the decedent would have been entitled to recover had the decedent lived. The damages inure to the exclusive benefit of the decedent's estate.

Pursuant to these statutes, the only claims that survive a decedent's death are those that the decedent would have been entitled to bring, or liable to defend against, during his or her lifetime.

In the present case, all of the claims asserted by the Estate in Count I of the amended complaint relate to Castleton Center's negligent treatment and supervision of Bagley. These claims arise out of or relate to the Contract "or the breach thereof or any tort claim." Appellant's App. at 24–25. As such, these claims are governed by the arbitration clause of the Contract and, consequently, Bagley, if alive, would not have been entitled to bring this cause of action against Castleton Center. Because the allegations asserted in Count I of the amended complaint would not have been justiciable, absent review of an arbitral award, during Bagley's lifetime, they clearly did not become justiciable upon her death. Accordingly, the trial court did not err by compelling the Estate to arbitrate the claims alleged in Count I of the amended complaint.

Further, Count II of the amended complaint, which encompasses the wrongful death action, alleges that Castleton Center failed to prevent Bagley's falls and to time-

ly diagnose her urinary tract infection and that, as a result, Bagley required "surgical intervention that she did not survive." Appellee's App. at 16. Indiana Code Section 34–23–1–1 governs wrongful death actions and provides, in pertinent part, that:

When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor against the latter, if the former might have maintained an action had he or she, as the case may be, lived, against the latter for an injury for the same act or omission.

Thus, pursuant to Indiana Code Section 34–23–1–1, a personal representative may maintain a cause of action against an alleged wrongdoer only if the decedent, if alive, might have maintained such a cause of action.

Here, because the claims asserted in Count II of the amended complaint arose out of or related to the Contract or any tort claim, they are governed by the arbitration clause of the Contract. As such, regardless of whether these claims were asserted by Bagley, while alive, or the Estate, upon her death, they are not justiciable in a court of law, except as a review of an arbitral award. Accordingly, the trial court did not err when it compelled the Estate to arbitrate the wrongful death claims alleged in Count II of the amended complaint.

For the foregoing reasons, we affirm the trial court's order compelling the Estate to arbitrate its survival and wrongful death claims.

Affirmed.

BAKER, J., and FRIEDLANDER, J., concur.