
FILED
Jul 16 2014, 10:13 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**ANDREW B. MILLER**
Starr Austen & Miller, LLP
Logansport, Indiana

ATTORNEYS FOR APPELLEE:

**DANIEL D. BOBILYA**
**CONOR S. SLOCUM**
Bobilya Law Group, LLC
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN M. ABBOTT, LLC, CLASS REPRESENTATIVE AND ALL OTHERS SIMILARLY SITUATED, | ) ) ) ) | |
| Appellant-Defendant/Counterclaimant, | ) ) | |
| vs. | ) ) | No. 02A05-1402-PL-53 |
| LAKE CITY BANK, | ) ) | |
| Appellee-Plaintiff/Counterdefendant. | ) | |

### APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable David J. Avery, Judge
Cause No. 02D01-0906-PL-239

**July 16, 2014**

**OPINION - FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

John M. Abbott, LLC ("Abbott LLC"), acting as class representative, filed a class action against Lake City Bank ("the Bank"), maintaining that the Bank breached the terms of its promissory note ("the Note") executed in conjunction with certain commercial real estate loans. The dispute concerned the Bank's use of a 365/360 interest calculation method and its alleged impact on the interest owed. The Bank filed a motion for summary judgment, which the trial court granted. Abbott LLC now appeals, asserting that genuine issues of material fact exist that render summary judgment improper. Finding no genuine issue of material fact, we affirm the trial court's summary judgment order.

**Facts and Procedural History**

In 2006, John Abbott sought to purchase a retail hardware business in Rochester. He formed Abbott LLC (of which he is sole owner) to purchase and obtain financing for the business. Abbott LLC sought a $150,000 commercial loan from the Bank. At closing, John Abbott signed the Note on behalf of Abbott LLC. The Note contains a provision stating that the borrower acknowledges that he read and understood the Note's provisions before signing.

With respect to payment and interest rate, the Note states in pertinent part,

PAYMENT. Subject to any payment changes resulting from changes in the index, Borrower will pay this loan in 119 regular payments of $1,475.00 each and one irregular last payment estimated at $72,663.58. Borrower's first payment is due July 10, 2006, and all subsequent payments are due on the same day of each month after that. Borrower's final payment will be due on June 10, 2016, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; and then to any unpaid collection costs. *The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying*

2

*the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.* Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

VARIABLE INTEREST RATE. The interest rate on this Note is subject to change from time to time based on changes in an index which is the Five Year Treasury Bill (the "Index"). Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each 5 years. The first rate adjustment will be 6/9/11. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 4.910% per annum. The interest rate to be applied to the unpaid principal balance during this Note will be at a rate of 3.400 percentage points over the Index, resulting in an initial rate of 8.310% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (A) increase Borrower's payments to ensure Borrower's loan will pay off by its original final maturity date, (B) increase Borrower's payments to cover accruing interest, (C) increase the number of Borrower's payments, and (D) continue Borrower's payments at the same amount and increase Borrower's final payment.

Appellant's App. at 114 (emphasis added).

In June 2009, the Bank filed a commercial foreclosure action against certain borrowers. As part of that action, the borrowers filed a counterclaim seeking certification as a class and claiming that the Bank breached the terms of the Note pertaining to the interest rate. In January 2012, the trial court conditionally certified and stayed the class. In September 2012, counsel for Abbott LLC (and for the class) filed a motion to substitute Abbott LLC as class representative. The trial court granted the motion.

In its class action, Abbott LLC claimed that the Bank exceeded the agreed-upon interest rate by applying the 365/360 ratio. The Bank filed a motion for summary judgment,

3

which the trial court granted following a hearing. Abbott LLC now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

Abbott LLC contends that the trial court erred in granting the Bank's motion for summary judgment. We review the trial court's decision to grant or deny summary judgment using the same standard as the trial court. *Worman Enters., Inc. v. Boone Cnty. Solid Waste Mgmt. Dist.*, 805 N.E.2d 369, 373 (Ind. 2004). A motion for summary judgment is properly granted only when the pleadings and designated evidence reveal that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Bank of New York v. Nally*, 820 N.E.2d 644, 648 (Ind. 2005). In determining whether issues of material fact exist, we must accept as true those facts established by evidence favoring the nonmoving party and resolve all doubts against the moving party. *Id*. Even where the trial court, or this Court, believes that the nonmoving party will be unsuccessful at trial, summary judgment should not be granted where material facts conflict or conflicting inferences are possible. *Dunaway v. Allstate Ins. Co.*, 813 N.E.2d 376, 384 (Ind. Ct. App. 2004). Mere speculation cannot create questions of fact, meaning that "guesses, supposition and conjecture are not sufficient to create a genuine issue of material fact to defeat summary judgment." *Beatty v. LaFountaine*, 896 N.E.2d 16, 20 (Ind. Ct. App. 2008) (citation omitted), *trans. denied* (2009). Once made, the trial court's decision to grant summary judgment is clothed with a presumption of validity, and the appellant bears the burden of

4

proving that the trial court erred. *Alexander v. Marion Cnty. Sheriff*, 891 N.E.2d 87, 92 (Ind. Ct. App. 2008), *trans. denied* (2009).[1]

Interpretation and construction of contract provisions are questions of law. *Fischer v. Heymann*, 943 N.E.2d 896, 900 (Ind. Ct. App. 2011), *trans. denied*. As such, cases involving contract interpretation are particularly appropriate for summary judgment. *Westfield Cos. v. Knapp*, 804 N.E.2d 1270, 1274 (Ind. Ct. App. 2004), *trans. denied*. We review the contract as a whole, attempting to ascertain the parties' intent and making every attempt to construe the contract's language "so as not to render any words, phrases, or terms ineffective or meaningless." *Fischer*, 943 N.E.2d at 900 (citation omitted). We examine the parties' intent at the time the contract was made. *Dave's Excavating, Inc. v. City of New Castle*, 959 N.E.2d 369, 376-77 (Ind. Ct. App. 2012), *trans. denied*.

Where terms of a contract are clear and unambiguous, we will apply the plain and ordinary meaning of the terms and enforce the contract according to its terms. *Claire's Boutiques, Inc. v. Brownsburg Station Partners LLC*, 997 N.E.2d 1093, 1098 (Ind. Ct. App. 2013). If necessary, the text of a disputed provision may be understood by referring to other provisions within the four corners of the document. *Id*. The four corners rule states that where the language of a contract is unambiguous, the parties' intent is to be determined by reviewing the language contained within the "four corners" of the contract, and "parol or

---

[1] Abbott LLC phrases portions of its argument in terms of clear error. Where, as here, the trial court issues findings of fact and conclusions thereon in granting a motion for summary judgment, our standard of review is not altered. *Ellis v. City of Martinsville*, 940 N.E.2d 1197, 1201 (Ind. Ct. App. 2011). In other words, we are not bound by the trial court's specific findings and do not apply the clearly erroneous standard; instead, we apply a de novo standard, and the trial court's findings merely facilitate our review by providing us with a statement of the trial court's reasons. *Id*.

extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence." *Adams v. Reinaker*, 808 N.E.2d 192, 196 (Ind. Ct. App. 2004). Extrinsic evidence cannot be used to create an ambiguity. *Id*.

In the general sense, Abbott LLC seems to challenge the 365/360 method of calculating monthly payments, claiming that the 365/360 method conflicts with the interest rate term "per annum" and results in a higher effective interest rate than the initial rate specified in the Note. In this vein, we note that the 365/360 method has consistently withstood such legal challenges in the federal courts and in other jurisdictions. *See*, *e.g.*, *Kreisler & Kreisler, LLC v. Nat'l City Bank*, 657 F.3d 729, 733 (2011) (affirming dismissal in favor of bank and holding that 365/360 method is not inconsistent with term "per annum"); *Bank of Am. v. Shelbourne Dev. Grp., Inc.*, 732 F. Supp. 2d 809, 824 (N.D. Ill. 2010) (finding no conflict in using 365/360 method and stating that applicable rates were "per annum"); *JNT Props., LLC v. KeyBank Nat'l Ass'n*, 981 N.E.2d 804, 806 (Ohio 2012) (holding that using phrase "annual interest rate" immediately before specifying 365/360 as method for computing interest does not render the former ambiguous); *Asset Exch. II, LLC v. First Choice Bank*, 953 N.E.2d 446, 454 (Ill. App. Ct. 2011) (affirming dismissal in favor of bank and holding note unambiguous where payment paragraph applied 365/360 method and interest paragraph stated rate as 8.250% per annum); *Hubbard Street Lofts LLC v. Inland Bank*, 963 N.E.2d 262, 271-72 (Ill. App. Ct. 2011) (affirming dismissal in favor of bank and

6

finding no ambiguity where 365/360 method was stated in payment paragraph of note and "per annum" was stated in interest paragraph of note).

Here, Abbott LLC claims that the Bank's Note is intrinsically ambiguous, citing the following sentence in the "PAYMENT" paragraph of the Note: "The *annual interest rate for this Note is computed on a 365/360 basis*; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding." Appellant's App. at 114 (emphasis added). Abbott specifically challenges the use of the term "annual interest *rate*" instead of "annual interest *payments*" or "annual interest *amount*" immediately preceding the statement concerning use of the 365/360 method. In granting the Bank's motion for summary judgment, the trial court found the highlighted clause unambiguous as a matter of law and found that the "PAYMENT" and "VARIABLE INTEREST RATE" paragraphs could be harmonized. Abbott LLC characterizes this as the trial court improperly rewriting the contract. *See Claire's Boutiques*, 997 N.E.2d at 1098 ("Nor may a court write a new contract for the parties or supply missing terms under the guise of construing a contract.").

We disagree and find persuasive the Ohio Supreme Court's recent decision in *KeyBank*, another putative class action in which the disputed terms were nearly identical to the ones here. In reinstating the trial court's grant of summary judgment in favor of the bank, the *KeyBank* court explained,

> The issue in this case is not whether the 365/360 method of calculating interest results in a higher effective interest rate. It undeniably does. The issue is whether the clause that defines the method by which interest is calculated is ambiguous. There is no doubt that the first clause is imprecise. It states: "The

7

annual interest *rate* for this Note is computed on a 365/360 basis." (Emphasis added.)  But the annual interest rate is not based on the 365/360 method.  As already explained, the note includes a provision stating that the annual interest rate is based on the rate set by the Federal Home Loan Bank in Seattle.

**...** The real issue is whether the inartful use of the term "annual interest rate," which is clearly at variance with the next clause setting the 365/360 method as the applicable method for computing interest, renders the clause ambiguous.  JNT argues that the clause is ambiguous and therefore incapable of altering the plain and ordinary meaning of the term "per annum." We do not agree.  Read in context, the clause is not ambiguous.  Rather, the clause "[t]he annual interest rate for this Note is computed on a 365/360 basis," followed immediately by a detailed description of the 365/360 method, is an imprecision, but not so confusing that a reasonable person would think that the rate set by the note would be calculated using something other than the 365/360 method.  It is clear that the term being defined is not the annual interest rate but rather the method of computing regular interest payments.

981 N.E.2d at 806.

Likewise, here, we find that the explanatory phrase that immediately follows the disputed clause negates any confusion that otherwise might have been caused by the inclusion of the term "annual interest *rate*" instead of "annual interest *amount*" when specifying the method of calculating payments.  As in *KeyBank*, the Note makes it clear that the term being defined (the 365/360 method) is the method of computing regular interest payments, not the annual interest rate.  As for the interest rate, the "VARIABLE INTEREST RATE" paragraph clearly states that the interest rate will be tied to the "Five Year Treasury Bill" index.  *Id*. at 114.

Under Indiana law, a party to a contract "is presumed to understand and assent to the terms of the contracts he or she signs." *Sanford v. Castleton Health Care Ctr., LLC*, 813 N.E.2d 411, 418 (Ind. Ct. App. 2004), *trans. dismissed* (2006).  Additionally, here, the Note

8

specifies that each borrower acknowledges reading and understanding the Note's terms before signing. In other words, the timeframe for a borrower to seek clarification concerning the terms is before signing. In the case of Abbott LLC, there is no designated evidence to indicate that John Abbott ever sought clarification before signing. Instead, Abbott LLC's designated extrinsic evidence comprises evaluations and opinions offered years after the date of execution of the Note. Even if an ambiguity were present, this evidence would shed no light on the parties' intent as of the time of contract formation.[2]

Based on the foregoing, we conclude as a matter of law that the Note is not ambiguous. As such, we affirm the trial court's order granting summary judgment in favor of the Bank.

Affirmed.

BAKER, J., and BARNES, J., concur.

---

[2] We reject Abbott LLC's assertion that the Note is a contract of adhesion, observing that adhesion contracts (standardized contracts, which, imposed and drafted by a party of superior bargaining strength, relegate subscribing parties only the opportunity to adhere to the contract or reject it) are not per se unconscionable. *Sanford*, 813 N.E.2d at 417. A contract is unconscionable only where there is a great disparity in the parties' bargaining power, such that the weaker party is made to sign unwillingly or without being aware of the contract's terms. *Id*. Abbott LLC has failed to designate any evidence that the class member borrowers were made to sign unwillingly or were unaware of the Note's terms.