## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 14 2019, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark E. Miller
Evansville, Indiana

ATTORNEY FOR APPELLEE

Shawn M. Sullivan
Evansville, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Randall Patton,<br>*Appellant-Defendant,*<br><br>v.<br><br>Leann Morris,<br>*Appellee-Plaintiff.* | June 14, 2019<br><br>Court of Appeals Case No.<br>18A-PL-2087<br><br>Appeal from the Vanderburgh Superior Court<br><br>The Honorable Leslie C. Shively, Judge<br><br>Trial Court Cause No.<br>82D01-1804-PL-2471 |

**Tavitas, Judge.**

# Case Summary

In this interlocutory appeal, Randall Patton appeals the trial court's grant of a complaint for declaratory judgment filed by Leann Morris. We affirm.

# Issues

Patton raises four issues, which we restate as:

> I. Whether the parties' agreements were unenforceable because there was no meeting of the minds.
>
> II. Whether the parties' agreements were unenforceable because they were unconscionable.
>
> III. Whether the parties' agreements were unenforceable on grounds of fraud and misrepresentation.
>
> IV. Whether the parties' agreements were unenforceable on grounds of ultra vires.

# Facts

Patton is the sole shareholder of Patton Heating & Air Conditioning Company, Inc. ("Company"), in Evansville. In 2017, the Company hired Morris as a service technician. Morris soon noticed serious mismanagement at the Company. Patton was not actively involved in the management of the Company and was allowing others to make business decisions. Later in 2017, Morris approached Patton about Patton giving Morris an ownership interest in the Company in exchange for Morris helping Patton manage the Company. Patton was interested, and Morris retained an attorney to draft documents regarding the transaction.

[4] Morris delivered drafts of the documents to Patton on November 3, 2017. Patton reviewed the documents, and they negotiated certain changes. Morris' attorney made revisions to the documents, and Morris delivered the revised documents to Patton on November 12, 2017. Patton did not have an attorney review the documents. Morris and Patton then signed a Stock Purchase Agreement, a Stockholders' Agreement, an Additional Agreement,[1] and a handwritten Patton Heating Agreement[2] (collectively, "the Agreements") on November 16, 2017.

[5] The Stock Purchase Agreement noted that Patton owned 250 shares of the Company and provided in relevant part:

> The Shareholder desires to sell up to half of his respective shares of stock in the Company to Buyer and Buyer desires to acquire said shares from the Shareholder on the terms and conditions set forth herein.
>
> Upon acquisition of the shares of stock of the Company, Buyer, through her ownership and operation of the Company, will be

---

[1] The Additional Agreement provided:

> Title of my position with [sic] be: Chief Executive Officer
>
> Compensation will be an [sic] reasonable amount by law for position obtained and to be assessed upon determination of business records, financial status and ability.
>
> Also, if there would be any tax implication for shares purchased the corporation will agree to cover.

Exhibit Vol. I p. 142.

[2] The handwritten agreement provided: "Written agreement for purchase states as is with stipulations understood by purchaser that both parties that land & building is not included therefore agreed upon." *Id.* at 159.

able to expand and strengthen Company's services and facilitate the provision of needed services to the community.

* * * * *

1.2 Purchase and Sale of Phase I Shares.

(a) Subject to the terms and conditions herein stated, the Shareholder hereby agrees to sell and transfer to Buyer, and Buyer hereby agrees to purchase from Shareholder, eighty-three (83) of the issued and outstanding shares of the Company (the "Phase I Shares").

(b) The aggregate purchase price for the Phase I Shares (the "Phase I Purchase Price") shall be One and 00/100 Dollar ($1.00). The Phase I Purchase Price shall be payable pro rata to the Shareholder at the Phase I Closing.

(c) The closing of this transaction for Phase I Shares shall take place on or before the 16th day of November, 2017 at the offices of the Shareholder, located at 517 Ingle St, Evansville, Indiana 47708, or at such other time and place as the parties may mutually agree ("Phase I Closing").

(d) Upon compliance with the terms of this Agreement, at Phase I Closing, Shareholder shall deliver to Buyer, free and clear of all debts, mortgages, pledges, liens, encumbrances, security interests, charges, restrictions, or other matters, certificates of the Phase I Shares, duly endorsed over to Buyer, or accompanied by executed stock powers in favor of Buyer.

Exhibit Vol. I pp. 24-25. Upon the meeting of certain performance goals, Patton agreed to transfer additional shares to Morris in Phase II and Phase III.

The Stockholders' Agreement provided in relevant part:

\* \* \* \* \*

Section 20. Management of the Corporation.

20.1 The Stockholders acknowledge and agree that the Board of Directors of the Corporation shall consist of three (3) members (each, a "Board Member") selected by the Stockholders, subject to the following limitations. One (1) Board Member shall be appointed by, and serve at the pleasure of, Morris; one (1) Board Member shall be appointed by, and serve at the pleasure of Patton; and one (1) Board Member shall be an independent Board Member mutually appointed by, and serving at the pleasure of both Morris and Patton. In the event Morris and Patton are unable to agree upon and mutually appoint the independent Board Member then Morris shall appoint the independent Board Member. Until otherwise designated by Morris, her representative on the Board shall be T. Leann Morris.

*Id.* at 16-17. Section 20.2 of the Stockholders' Agreement designated Morris as the Company's Chief Executive Officer.

Morris immediately started acting as the Company's chief executive officer. Patton and Morris began having disagreements in approximately February 2018. Patton then changed the locks on the premises and refused to allow Morris to manage the Company. On April 16, 2018, Morris called a special meeting of the Company's shareholders, and Patton refused to attend. Morris exercised her right to appoint an independent Board Member. A meeting of the Company's Board of Directors was then held.

[8] On April 27, 2018, Morris filed a complaint for: (1) breach of contract regarding the Stockholders' Agreement; (2) breach of contract regarding the Stock Purchase Agreement; and (3) declaratory judgment regarding Morris' rights and liabilities. Morris also requested injunctive relief. Patton then filed an answer, affirmative defenses, and counterclaims against Morris.

[9] In May 2018, the trial court held a hearing on Morris' motion for preliminary injunction. At the conclusion of the hearing, the trial court ordered that Morris be allowed back on the Company's property, that Morris have access to the books and records of the Company, and that the parties "fashion an interim business agreement." Appellant's App. Vol. II p. 71.

[10] At Morris' request, the trial court then set the matter for an evidentiary hearing on the bifurcated claim for declaratory judgment and Patton's affirmative defenses. A bifurcated bench trial was held with respect to the declaratory judgment claim on July 2, 2018. On Patton's motion, the trial court incorporated the evidence presented during the preliminary injunction hearing.

[11] On August 16, 2018, the trial court issued findings of fact and conclusions of law regarding the declaratory judgment claim as follows:

> 1. The Stock Purchase Agreement (Plaintiffs Ex. 2) and Stockholders' Agreement (Plaintiffs Ex. 1) are binding and enforceable agreements upon Morris and Patton.
>
> 2. Morris is a shareholder of the Company: Morris owns 83 share[s] of stock in the Company, and Patton owns 167 shares of stock in the Company.

3. Morris is the duly appointed and elected Chief Executive officer of the Company, and otherwise authorized to act and bind the Company in her capacity as the Company's CEO.

4. The three (3) member Board of Directors of the Company is comprised of the following individuals: Morris, Patton, and Steve Settles, 830 Blue Street, Bonneterre, Missouri.

5. Unless and until the Company would hereinafter take action, to the contrary Morris is entitled to access the Business Premises, its equipment and other Company property thereon.

6. Morris and Patton are to convene and attend a special meeting of the Company's shareholders and directors within fifteen (15) days after the entry of this judgment to take action, if any, consistent with this court's entry of judgment herein.

Appellant's App. Vol. II p. 21. Patton now appeals.[3]

# Analysis

[12] Patton appeals the trial court's judgment for Morris with respect to her declaratory judgment claim and Patton's affirmative defenses. Because the trial court entered findings of fact and conclusions of law, we review the findings and the judgment for clear error. Ind. Trial Rule 52(A). "This means that the evidence must support the findings and the findings must support the judgment." *Gittings v. Deal*, 109 N.E.3d 963, 970 (Ind. 2018), *reh'g denied*. "We

---

[3] Morris filed a motion to dismiss the appeal, arguing that the appeal was not a proper interlocutory appeal as of right under Indiana Appellate Rule 14(A). We denied Morris' motion pursuant to Indiana Appellate Rule 14(A)(3).

set aside the findings only if the record contains no supporting evidence, but we review the court's legal conclusions de novo." *Id.*

[13] The trial court found that the Agreements were valid and enforceable; Patton, however, seeks to avoid the enforcement of the Agreements that he entered into with Morris. Generally, the interpretation and construction of contract provisions are questions of law. *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014). We review the contract as a whole, attempting to ascertain the parties' intent. We make every attempt to construe the contract's language in a way that we do not render any words, phrases, or terms ineffective or meaningless. *Id.* Where terms of a contract are clear and unambiguous, we will apply the plain and ordinary meaning of the terms and enforce the contract according to its terms. *Id.* A contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms. *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002), *reh'g denied*.

[14] Patton does not argue that the Agreements are ambiguous, and our review indicates that the Agreements' terms are clear and unambiguous. Rather, Patton argues that the Agreements are unenforceable because: (1) there was no meeting of the minds; (2) the Agreements are unconscionable; (3) the

Agreements were procured through fraud; and (4) the Agreements are ultra vires because they violate the Company's articles of incorporation.[4]

## I. *Meeting of the Minds*

Patton argues that the Agreements are unenforceable because there was no meeting of the minds. Contracts are formed when parties exchange an offer and acceptance. *Jernas v. Gumz*, 53 N.E.3d 434, 445 (Ind. Ct. App. 2016), *trans. denied*. A meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract. *Id.* The basic requirements for a contract are offer, acceptance, consideration, and a meeting of the minds between the contracting parties on all essential elements or terms of the transaction. *Id.* There must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract. *Id.*

Patton seems to argue that the parties had different intentions regarding: (1) when Morris was to earn her shares; (2) Morris' control over the third director; and (3) Morris' ability to compete with the Company. Patton argues that he "did not agree to any of these things." Appellant's Br. p. 20.

---

[4] Patton argues that the trial court should have used the parol evidence admitted during the hearings to find the Agreements unenforceable. The trial court noted that it had been "quite liberal" in allowing Patton to present parol evidence. Appellant's App. Vol. II p. 19. "'[P]arol or extrinsic evidence is inadmissible to expand, vary, or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence.'" *John M. Abbott*, 14 N.E.3d at 56 (quoting *Adams v. Reinaker*, 808 N.E.2d 192, 196 (Ind. Ct. App. 2004)). The trial court found none of those circumstances here and did not err.

[17]     The trial court rejected Patton's argument and found:

> Patton asserts that the contracts are not enforceable because there was not a "meeting of the minds." For a meeting of the minds, the contracting parties must have the same intent essential[ly]. *Wallem v. CIS Industries Inc.*, 725 N.E.2d 880. The intent relevant is not the parties['] subjective intent but their outward manifestations of it. *Centennial Mortgage, Inc. v. David Blumenfeld*, [745] N.E.2d 268 (Ind. Ct. App. 2001). A court does not examine the hidden intentions in the secretive heart of a person; rather it examines the final expression found in conduct, which requires an examination of all the circumstances. *Ochoa v. Ford*, 641 N.E.2d 1042 (Ind. Ct. App. 1994).
>
> The final version of the contracts was created after negotiations between the parties. After negotiations, documents were then given to Patton several days before the contracts were executed at the Company's place of business. The conduct of the party's [sic], therefore, clearly indicates that there was a meeting of the minds.

Appellant's App. Vol. II p. 19.

[18]     Although Patton now claims that he did not agree to the terms of the Agreements, the evidence shows that: (1) Patton and Morris negotiated the terms of the Agreements; (2) Morris presented a draft Agreement to Patton, and Patton requested revisions; (3) after making revisions to the Agreements, Morris provided the revised Agreements to Patton; (4) Patton had the Agreements for several days and did not request further revisions; (5) Patton and Morris then met and signed the Agreements; and (6) Patton then allowed Morris to assume control over the management of the Company.

Patton had the opportunity to read the Agreements and make further revisions. "Under Indiana law, a party to a contract 'is presumed to understand and assent to the terms of the contracts he or she signs.'" *John M. Abbott, LLC*, 14 N.E.3d at 58 (quoting *Sanford v. Castleton Health Care Ctr., LLC*, 813 N.E.2d 411, 418 (Ind. Ct. App. 2004), *trans. dismissed*). "A court cannot relieve a party from the terms of a contract because of his failure to read all or part of it, as he is bound to know the contents of the contract which he signs." *Pinnacle Computer Servs., Inc. v. Ameritech Pub., Inc.*, 642 N.E.2d 1011, 1017 (Ind. Ct. App. 1994), *reh'g denied*. Patton's later remorse over entering into the Agreements does not mean that the parties lacked a "meeting of the minds." The trial court's finding on this issue is not clearly erroneous.

## II. *Unconscionability*

Patton argues that the Agreements are unenforceable because they are unconscionable. "'As a general rule, a contract may be declared unenforceable due to unconscionability when there is a great disparity in bargaining power which leads the party with the lesser power to sign a contract unwillingly and unaware of its terms.'" *McAdams v. Foxcliff Estates Cmty. Ass'n, Inc.*, 92 N.E.3d 1144, 1150 (Ind. Ct. App. 2018) (quoting *Pinnacle Computer*, 642 N.E.2d at 1017)). "In such a case, the contract must be one that no sensible person not under delusion or duress or in distress would make, and one that no honest and fair person would accept." *Id.*

The trial court rejected Patton's argument and found:

> Patton did not execute the Stock Purchase Agreement or Stockholders' Agreement under any delusion, duress or distress, nor was there any inequality of bargaining power by and between the parties.
>
> There is absolutely no evidence that Morris possessed "prodigious amount[s] of bargaining power" over Patton. To the contrary, Patton was the sole owner of the Company and would remain a controlling shareholder after completion and satisfaction of all conditions set forth in respective agreements. Patton has failed to carry his burden of proof that either the Stock Purchase Agreement or Stockholders' Agreement can be avoided on grounds of unconscionability.

Appellant's App. Vol. II p. 18.

[22] There is no evidence here of a great disparity in bargaining power between the parties. Relying on *Martin Rispens & Son v. Hall Farms*, 621 N.E.2d 1078 (Ind. 1993), *reh'g denied,*[5] and *Stiefler v. McCullough*, 174 N.E. 823, 97 Ind. App. 123 (1931), for the proposition that unequal bargaining power is not required, Patton contends that Morris took advantage of Patton's "necessities and distress to obtain an unfair advantage." Appellant's Br. p. 18.

[23] "A contract procured from one in a situation of distress and necessity by another who stands in a relation of confidence or who is in a situation of advantage may be avoided." *Day v. Bicknell Minerals, Inc.*, 480 N.E.2d 567, 571 (Ind. Ct. App. 1985), *reh'g denied*. There is no indication here that Patton and

---

[5] Abrogated by *Hyundai Motor America, Inc. v. Goodin*, 822 N.E.2d 947 (Ind. 2005).

Morris were in a confidential relationship. The evidence showed, however, that Patton's business was suffering due to poor management. Patton was aware that he needed assistance and accepted Morris' offer with the hope that she could turn things around. Morris merely negotiated with Patton on the terms of the Agreements, which Patton signed. There is no evidence that Patton was without other options, that Morris caused Patton to be in the situation, or that Morris somehow deprived Patton of his free will. Accordingly, the trial court's finding regarding unconscionability of the Agreements is not clearly erroneous. *See, e.g.*, *Day*, 480 N.E.2d at 571-72 (noting that "[n]o acts here were wrongful, nor did they deprive the shareholders of the exercise of free will. Through no fault of UM, the shareholders simply were faced with two choices: they could take the deal it offered or face action by the banks. The shareholders were in economic peril because their company failed to meet its obligations, not by virtue of any course of conduct attributable to UM.").

### *III. Fraud*

[24] Next, Patton argues that the Agreements are unenforceable because they were procured through fraud. The trial court rejected Patton's argument and found:

> Patton also failed to carry his burden of demonstrating that the contract should be avoided on grounds of fraud or other misrepresentation. Morris is bound to read and understand the contracts he signed. *See, e.g., Mayflower Transit, Inc. v. Davonport*, 714 N.E.2d 794, 799 (Ind. Ct. App. 1999). There are basically two types of frauds, "actual" and "constructive". Patton's assertion is essentially one of "constructive fraud" which arises out of conduct [that], if sanctioned by law, would secure the

offending party an unconscionable advantage. *Messmer v. KDK Financial Services Inc.*, 82 N.E.3d 774 (Ind. Ct. App. 2017). Essential to a constructive fraud defense or claims is the existence of a duty owed by the culpable party to the injured party. *Heyser v. Noble Roman's*, 933 N.E.2d [16] (Ind. Ct. App. 2010). There is no evidence establishing that Morris had any pre-existing duty to Patton.

Appellant's App. Vol. II pp. 18-19. On appeal, Patton argues that the trial court misunderstood his argument to be a claim of constructive fraud. According to Patton, his claim was one of fraudulent inducement.

[25] "Fraud in the inducement of a contract is a basis for its rescission." *A.G. Edwards & Sons, Inc. v. Hilligoss*, 597 N.E.2d 1, 3 (Ind. Ct. App. 1991). "Generally, parties are obligated to know the terms of the agreement they are signing, and cannot avoid their obligations under the agreement due to a failure to read it." *Park 100 Inv'rs, Inc. v. Kartes*, 650 N.E.2d 347, 349 (Ind. Ct. App. 1995). "However, where one employs misrepresentation to induce a party's obligation under a contract, one cannot bind the party to the terms of the agreement." *Id.* Fraudulent inducement occurs when a party is induced through fraudulent misrepresentations to enter into a contract. *Brumley v. Commonwealth Bus. Coll. Educ. Corp.*, 945 N.E.2d 770, 776 (Ind. Ct. App. 2011). "'If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient.'" *Id.* (quoting Restatement (Second) of Contracts § 164(1) (1981)). Fraudulent inducement

does not prevent the formation of a contract altogether, but it does render the contract "voidable." *Id.*

[26] This fraudulent inducement claim also fails. Patton contends that the Agreements did not contain "the terms Patton insisted upon." Appellant's Br. p. 22. As we have discussed, however, Patton had the opportunity to review and revise the Agreements. Even assuming Morris misrepresented the terms of the Agreements, Patton was not justified in relying upon any alleged misrepresentation. Patton was not prevented in any way from making further clarifications or revisions. The trial court properly denied Patton's fraud claim.

### IV. Ultra Vires

[27] Finally, Patton argues that the Agreements were "ultra vires" and void because they violated the Company's articles of incorporation and bylaws. An ultra vires act is an act beyond the scope of the powers of a corporation as defined by its charter or act of incorporation. *Bajdek v. Bd. of Trustees of Am. Legion Pulaski Post No. 357 Tr. for Veterans of World War I*, 132 Ind. App. 116, 133, 173 N.E.2d 61, 69 (1961).

[28] Patton contends that the Agreements were not approved by the Company's board and were, thus, void. The Company was not a party to the Stock Purchase Agreement. Rather, Patton signed that agreement in his position as a shareholder. As for the Stockholders' Agreement, Patton signed that agreement in his position as president of the Company. Morris points out that the Company's articles of incorporation allow contracts and other legal instruments

to be signed for and on behalf of the Company by the Company president. *See* Exhibit Vol. I p. 244. The trial court properly rejected Patton's argument that the Agreements are void as an ultra vires action.

## Conclusion

[29] The parties' Agreements are valid and enforceable. The trial court's entry of declaratory judgment in favor of Morris is not clearly erroneous. We affirm.

[30] Affirmed.


Baker, J., and May, J., concur.